**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

John N. Semertzides, M.D., )
)
    Plaintiff, ) Case No. 1:14-CV-135
)
vs. )
)
Bethesda North Hospital, <u>et al.</u>, )
)
    Defendants. )

O R D E R

This matter is before the Court on the motion to dismiss filed by Defendants Bethesda Hospital, Inc. and TriHealth, Inc. (Doc. No. 10). For the reasons that follow, Defendants' motion to dismiss is well-taken and is **GRANTED.**

I. <u>Background</u>

Plaintiff, Dr. John Semertzides, filed a complaint against Defendants Bethesda Hospital, Inc., TriHealth, Inc., Queen City Surgical Consultants, LLC, and unidentified John and Jane Does alleging that they conspired to violate the Sherman Act, 15 U.S.C. § 1, <u>et seq.</u>, by instituting unwarranted and unfair peer review proceedings for the purpose of restraining trade and eliminating competition in the Hamilton County surgical practice market.

According to the complaint, Plaintiff is a medical doctor who, beginning about October 1985, was awarded surgical practice privileges at Bethesda Hospitals. <u>Id.</u> ¶ 7. Plaintiff alleges that beginning in January 2010, he practiced surgery exclusively at Bethesda Hospitals. <u>Id.</u> In other words, practicing surgery at Bethesda Hospitals became Plaintiff's sole source of income. <u>Id.</u>

The complaint alleges that prior to November 2009, Plaintiff's skills, judgment, and abilities as a surgeon were never questioned and that his incidence of mistakes was de minimis and was superior to that of his peers. Complaint ¶ 9. The complaint alleges, however, that in November 2009, the Hospital Surgical Advisory Committee raised questions concerning his care of a particular patient. Id. ¶ 10. The complaint alleges further that the committee's questions about this patient morphed into a full-fledged investigation into all of his patient admissions to the hospital. Id. Plaintiff alleges that the hospital initiated a peer review process, which he characterizes as a "witch hunt," that lasted for approximately two years and resulted in the suspension and ultimate termination of his surgical practice privileges. Id. ¶¶ 10, 11. Plaintiff claims that the state medical board ultimately cleared him of any wrongdoing in the cases reviewed by the Defendants and that Defendants overlooked more egregious misconduct by other, more favored doctors.

The complaint suggests that the peer review process he was subjected to was biased because the reviewing committee was supervised by members of Defendant Queen City Surgical Consultants. Id. ¶ 11. The complaint alleges that Plaintiff and Queen City Surgical Consultants were competitors and that Defendants used the peer review process as a means to reduce competition rather than to improve patient care. Id. ¶ 12. The complaint suggests that Defendants were interested in eliminating Plaintiff as a provider of surgical adhesion surgery, which Queen City Surgical Consultants provide but not as the "stand alone" procedure that Plaintiff apparently provided. Id. ¶¶ 12, 14. The complaint alleges that as a result of the termination of his surgical privileges, patients must forego treatment or seek surgical adhesion surgery outside of

the greater Cincinnati area, sometimes out of state and at "great costs and expense." Id. ¶ 14.

As already mentioned, the complaint alleges that the Defendants conspired to violate the Sherman Act by manipulating the peer review process in order to restrain trade and to reduce competition in the surgical practice market. The complaint also asserts two other causes of action against the Defendants.

Plaintiff's second claim is something of a mishmash. Captioned as a False Claims Act violation, Plaintiff's second claim nevertheless indicates that the Defendants retaliated against him for blowing the whistle on alleged turf wars between surgical groups and practitioners and alleged efforts to reduce competition in the surgical market. This claim alleges that kickbacks were paid to those "connected politically" with the Defendants. Finally, this claim asserts that the Defendants used the peer review process to retaliate against him in response to his attempts to question these practices in violation of "Federal and State Whistleblower Acts." Complaint ¶ 17.

Plaintiff's third claim is captioned "Intentional Infliction of Emotional Distress and the Maintenance of a Hostile Work Environment." However, after incorporating by reference paragraphs 1 through 19 of the complaint, this claim alleges only that "[t]he above actions and/or conduct of all named Defendants is/are violative of State/Federal Labor and Employment laws governing and prohibiting the maintenance of a hostile work environment, entitling Plaintiff to damages to be determined by the Court." Complaint ¶ 21.

Defendants Bethesda Hospitals, Inc. and TriHealth, Inc. now move to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Defendants argue that they are immune from liability for damages on all of Plaintiff's claims under the Health Care Quality Improvement Act.  In any event, Defendants argue, the complaint fails to state claims for relief.  Defendants contend that Plaintiff's Sherman Act claim is insufficient because it fails to allege an anti-trust injury or that they possess market power in a relevant market and because it only contains conclusory allegations of a conspiracy.  Defendants contend that Plaintiff's False Claims Act claim fails because he has not alleged that Defendants perpetrated some fraud or defalcation on the government.  They also point out that Plaintiff has not complied with any of the False Claims Act's procedural requirements, such as filing the complaint under seal and serving the complaint on the government.  Finally, Defendants argue that Plaintiff's third claim has not alleged any extreme or outrageous conduct or that he suffered any serious emotional distress.  They also point out to the extent Plaintiff is alleging some type of a claim under Title VII of the Civil Rights Act of 1964, he has not alleged membership in any protected group or that he was harassed based on his membership in a particular group.

In opposition, Plaintiff argues that Defendants' motion is procedurally incorrect. Plaintiff contends that his complaint is sufficiently pled but rather than dismissal, a more appropriate remedy would be for the Court to order him to file a more definite statement or be granted leave to file an amended complaint.  Plaintiff, however, does not specifically address any of Defendants' arguments for dismissal of the complaint.

In reply, Defendants point out that Plaintiff has not refuted any of its arguments for dismissal.  Defendants also observe that Plaintiff has not offered an amended

complaint for the Court to consider nor has he indicated why an amended complaint would not also be defective.

The Court agrees with Defendants that, regardless of whether the Health Care Quality Improvement Act applies in this case,[1] the complaint wholly fails to state any plausible claim for relief. Additionally, since Plaintiff is not entitled to an advisory opinion from the Court on the deficiencies of the complaint, he will not be given leave to file an amended complaint.

## II. Standard of Review

A motion to dismiss for failure to state a claim operates to test the sufficiency of the complaint. The court must construe the complaint in the light most favorable to Plaintiff, and accept as true all well-pleaded factual allegations. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Roth Steel Products v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1983). The court need not accept as true legal conclusions or unwarranted factual inferences. Lewis v. ACB Business Servs., Inc., 135 F.3d 389, 405 (6th Cir. 1998).

The complaint, however, must contain more than labels, conclusions, and formulaic recitations of the elements of the claim. Sensations, Inc. v. City of Grand Rapids, 526 F.3d 291, 295 (6th Cir. 2008) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The factual allegations of the complaint must be sufficient to raise the

---

[1] Generally speaking, the Health Care Quality Improvement Act, 42 U.S.C. § 11111(a)(1), provides "professional review bodies" and certain others immunity from damages based on claims arising out of a "professional review action" if certain procedural requirements concerning the review process are satisfied. Meyers v. Columbia/HCA Heatlhcare Corp., 341 F.3d 461, 467 (6th Cir. 2003).

5

right to relief above the speculative level.  Id.  Nevertheless, the complaint is still only required to contain a short, plain statement of the claim indicating that the pleader is entitled to relief.  Id. (citing Erickson v. Pardus, 551 U.S. 89, 93 (2007)).  Specific facts are not necessary and the pleader is only required to give fair notice of the claim and the grounds upon which it rests.  Id.  To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  Mere conclusions, however, are not entitled to the assumption of truth.  Id. at 678-89.  A claim is facially plausible if it contains content which allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Id. at 678.  Plausibility is not the same as probability, but the complaint must plead more than a possibility that the defendant has acted unlawfully.  Id.  If the complaint pleads conduct which is only consistent with the defendant's liability, it fails to state a plausible claim for relief.  Id.

## III. Analysis

### A. Sherman Act

Plaintiff first alleges that the Defendants conspired to violated the Sherman Act by manipulating the peer review process to restrain trade and reduce competition in the surgical market.

Section 1 of the Sherman Act states that "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."  15 U.S.C. § 1. In order to prove a Section 1 violation, the plaintiff must first show that an agreement between two or

more economic entities exists since unilateral conduct would not violate this statute. National Hockey League Players Ass'n v. Plymouth Whalers Hockey Club, 419 F.3d 462, 469 (6th Cir. 2005).

Next, because nearly every agreement between parties could be considered a restraint of trade, the Supreme Court has limited Section 1 to apply only to "unreasonable" restraints of trade. Id. at 469 (citing Nat'l Collegiate Athletic Ass'n v. Board of Regents of Univ. of Okla., 468 U.S. 85, 98 (1984)). Whether the restraint is "unreasonable" is determined by one of two approaches—either the per se rule or the "rule of reason." Id. at 469; Care Heating & Cooling, Inc. v. American Standard, Inc., 427 F.3d 1008, 1012 (6th Cir.2005). If the rule of reason is used, the plaintiff must additionally show that the restraint produced anticompetitive effects within the relevant product and geographic markets, while the per se rule is reserved for restraints that are so clearly unreasonable that their anticompetitive effects within geographic and product markets are inferred. Expert Masonry, Inc. v. Boone County, Ky, 440 F.3d 336, 342-43 (6th Cir. 2006). Finally, regardless of which approach is used, the plaintiff must also establish that the illegal conspiracy caused an antitrust injury to the plaintiff. In re Cardizem CD Antitrust Lit,, 332 F.3d 896, 909 n.15 (6th Cir. 2003).

In this case, the complaint does not indicate a claim for a per se Section 1 violation. For instance, the complaint does not allege that the Defendants conspired to fix prices or allocate markets. See id. at 907. Accordingly, the complaint must be analyzed to determine whether it states a plausible claim for a Section 1 violation under the rule of reason. Under the rule of reason analysis, the plaintiff bears the burden of establishing that the conduct complained of "produces significant anticompetitive effects

within the relevant product and geographic markets." Nat'l Hockey League, 325 F.3d at 718. In order to withstand a motion to dismiss under the rule of reason, the plaintiff must, inter alia, define the relevant market. Worldwide Basketball & Sport Tours, Inc. v. National Collegiate Athletic Ass'n, 388 F.3d 955, 962 (6th Cir. 2004). While difficult to define, "[t]he term 'relevant market' encompasses notions of geography as well as product use, quality, and description." Nat'l Hockey League, 325 F.3d at 720.

In this case, the complaint fails to state a Section 1 violation because, as Defendants suggest in their motion, it fails to define a relevant geographic market. In one place, the complaint indicates that Hamilton County is the relevant geographic market. Complaint ¶ 14. In another place, however, Plaintiff indicates that he serves patients not only in the "Tri-State area," but also "from around the country." Id. ¶ 12. In yet another place, the complaint indicates that the relevant market is "Ohio, Kentucky, Indiana and beyond." Id. ¶ 6. The Court cannot determine from these allegations whether the relevant geographic market is limited to Hamilton County, or whether it is Ohio, Kentucky and Indiana, or whether it indeed comprises the entire United States. See Brown Shoe Co. v. United States, 370 U.S. 294, 336-37 (1962) (stating that relevant geographic market must "both correspond to the commercial realities of the industry and be economically significant")(internal footnote and quotation marks omitted); Michigan Division-Monument Builders of N. Am. v. Michigan Cemetery Ass'n, 524 F.3d 726, 733 (6th Cir. 2008) (antitrust complaint can be dismissed on the basis of an insufficiently pled or totally unsupportable proposed market); Jacobs v. Tempur-Pedic Int'l, Inc., 626 F.3d 1327, 1336 (11th Cir. 2010) ("Although the parameters of a given market are questions of fact, antitrust plaintiffs still must present enough

information in their complaint to plausibly suggest the contours of the relevant geographic and product markets.") (internal citation omitted).

Relatedly, the complaint also fails to indicate what the relevant product or service is. The complaint first indicates that the relevant service is "surgical procedures" but most of the rest of the complaint refers to Plaintiff's surgical adhesion surgery practice. Complaint ¶ 14. Is the relevant service surgical procedures generally or is it limited to surgical adhesion surgery? The complaint does not say. A proposed product market must include all "commodities reasonably interchangeable by consumers for the same purposes." United States v. E.I. du Pont de Nemours & Co., 351 U.S. 377, 395 (1956). The complaint's failure to define the relevant product requires dismissal of Plaintiff's Sherman Act claim. Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield, 552 F.3d 430, 437 (6th Cir. 2008).

These deficiencies are sufficient to conclude that the complaint fails to plausibly allege a Sherman Act violation. Defendants' motion to dismiss Plaintiff's Sherman Act claim is well-taken and is **GRANTED.**

### B. False Claims Act

As mentioned earlier, the complaint is not clear whether it is asserting a true False Claims Act, i.e., that Defendants submitted false or fraudulent claims for payment to the government, or whether Plaintiff is claiming that Defendants retaliated against him for reporting wrongdoing, i.e., that he was a whistleblower. The two are not the same. As Defendants accurately point out, the complaint does not allege that any one of them submitted false claims to the government for payment. Therefore, it does not appear that the complaint is asserting a true qui tam cause of action. The False Claims Act

does protect employees from retaliation by their employers when they make internal reports of fraudulent activity, but the reports must allege fraud on the government. McKenzie v. BellSouth Telecomm., Inc., 219 F.3d 508, 516 (6th Cir. 2000). In this case, while the complaint indicates that Plaintiff made internal complaints about alleged attempts to lessen competition as well as "kickbacks" being paid, there are no allegations that he complained about fraud on the government. Accordingly, the Court concludes that the complaint fails to state a claim under the False Claims Act.

The State of Ohio has enacted the Whistleblower Protection Act, but there are certain procedural requirements the employee must comply with in order to gain protection as a whistleblower. Among these requirements, the employee must make both an oral and written report of the alleged violation to his supervisor or other responsible officer of the employer and then give the employer at least 24 hours to make a good faith effort to correct the violation. Contreras v. Ferro Corp., 652 N.E.2d 940, 944 (Ohio 1995). If the employer does not make a good faith effort to correct the violation, the employee may then report the violation to the authorities specified in the statute. Id. If the employee fails to satisfy these prerequisites, he will not be protected from retaliation by the statute. Id. In this case, the complaint fails to indicate that Plaintiff complied with the procedural requirements to gain protection as a whistleblower under the state statute. Accordingly, the complaint fails to state a claim for retaliation under the state Whistleblower Protection Act.

Defendants' motion to dismiss Plaintiff's second claim is well-taken and is **GRANTED**.

## C. Intentional Infliction of Emotional Distress and/or Hostile Work Environment

Plaintiff's third clam is also something of a hodgepodge. It asserts in conclusory fashion that Defendants intentionally inflicted emotional distress and created a hostile work environment by terminating his surgical privileges via the alleged unfair peer review process. The Court agrees that this cause of action fails to state any claim for relief.

An intentional infliction of emotional distress claim requires factual allegations that the defendant engaged in extreme and outrageous conduct, beyond all possible bounds of decency, and which is utterly intolerable in a civilized community. Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am. , 453 N.E.2d 666, 671 (Ohio 1983). In this case, the complaint fails to allege any conduct by Defendants which remotely approaches being extreme and outrageous. See id. (stating that conduct which is tortious or even criminal, or that is intended to inflict emotional distress, or that would even entitle the plaintiff to punitive damages for another tort is not extreme and outrageous). Accordingly, the complaint fails to state a claim for intentional infliction of emotional distress.

Plaintiff has also failed to state a claim for a hostile work environment. Claims arising under both the federal and state employment discrimination laws require factual allegations plausibly indicating that the employer discriminated against the plaintiff based on a protected characteristic. Keys v. Humana, Inc., 684 F.3d 605, 610 (6th Cir. 2012). The complaint contains no factual allegations indicating that the Defendants

discriminated against Plaintiff on the basis of a protected characteristic. Therefore, the complaint fails to state a claim for discrimination based on a hostile work environment.

Accordingly, Defendants' motion to dismiss Plaintiff's third claim is well-taken and is **GRANTED.**

### D. Leave to Amend Complaint

Plaintiff's memorandum in opposition states that the Court should grant him leave to amend the complaint if it finds his factual allegations insufficient to state claims for relief. Plaintiff, however, has not offered a proposed amended complaint for consideration. He is not entitled to an advisory opinion from the Court on the deficiencies of his complaint. Begala v. PNC Bank, Ohio, Nat. Ass'n, 214 F.3d 776, 783-84 (6th Cir. 2000). Accordingly, Plaintiff's request to amend the complaint is denied.

### Conclusion

In conclusion, Defendants' motion to dismiss is well-taken and is **GRANTED.** Plaintiff's claims against these Defendants are **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED**

Date June 9, 2014                  s/Sandra S. Beckwith
                                                      Sandra S. Beckwith
                                           Senior United States District Judge